AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>HAZIM ABDULZAHRA, also known as ("aka")<br>"Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda<br>Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka<br>"Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka<br>"Hazim Abdulritha Abdulzahra," aka "Hazim 'Abd-al-rida<br>'Abd-al-Zahra" | DOCKET NO. <br><br> FILED<br> CLERK, U.S. DISTRICT COURT<br> APR 3 2018<br> CENTRAL DISTRICT OF CALIFORNIA<br> BY _____ DEPUTY |
| | MAGISTRATE'S CASE NO.<br> 18MJ 00789 |

| Complaint for violation of Title 18, United States Code, Sections 1028A and 1621 | | |
|---|---|---|

| NAME OF MAGISTRATE JUDGE<br>Honorable Suzanne H. Segal | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>(1) 12/29/2008 through 8/6/2014<br>and (2) 11/17/2010 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN)<br>53014 Sweet Juliet Lane, Lake Elsinore 92532 |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

### [18 U.S.C. § 1028A: Aggravated Identity Theft]

From on or about December 29, 2008 through on or about August 6, 2014, in Los Angeles County, within the Central District of California and elsewhere, defendant HAZIM ABDULZAHRA, also known as ("aka") "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha Abdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra" ("ABDULZAHRA") knowingly possessed and used, without lawful authority, the name, date of birth, address, and other identifying information of R.G., during and in relation to the offense of Attempted Procurement of Citizenship and Naturalization Unlawfully, 18 U.S.C. § 1425(a).

### [18 U.S.C. § 1621: Perjury]

On or about November 17, 2010, defendant ABDULZAHRA made material false statements under oath in an interview with an Immigration Services Officer regarding his application for naturalization.

[See also attached Affidavit]

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Loan McIntosh   /S/<br><br>OFFICIAL TITLE<br>Special Agent |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br><br>*Suzanne H. Segal*   SUZANNE H. SEGAL | DATE<br>April 3, 2018 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Cameron L. Schroeder, x0596     REC: Detention

## AFFIDAVIT

I, Loan McIntosh, being duly sworn, state:

## I.   INTRODUCTION

1.      I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been an SA with HSI, and the United States Customs Service ("USCS"), since February 1995. I am currently assigned to the Resident Agent in Charge, San Fernando, which is tasked with investigating immigration fraud, trade fraud, Intellectual Property Rights ("IPR") violations, human smuggling, financial crimes, narcotics smuggling and illegal export violations. Prior to my current assignment, I was assigned to the Document and Benefit Fraud Task Force ("DBFTF"), Joint Terrorism Task Force ("JTTF"), Intellectual Property Rights Coordination Center in Washington, DC, USCS Attaché Philippines and HSI Attaché Bangkok. As an HSI/ICE/USCS SA, I have conducted criminal investigations involving immigration fraud, trade fraud, money laundering, narcotics trafficking, violations of the Protect Act, illegal exports, and IPR crimes. I have participated in the execution of search and arrest warrants and have seized evidence of violations of federal law as the case agent and in a secondary role.

## II.   PURPOSE OF AFFIDAVIT

2.      This affidavit is made in support of an arrest warrant and a criminal complaint charging Hazim ABDULZAHRA, also known as ("aka") "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha Abdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra," with violations of 18 U.S.C. § 1028A (Aggravated Identity Theft) and 18 U.S.C. 1621 (Perjury).

3.      The facts set forth in this affidavit are based on my personal observations and training, the court records of United States v. Hazim Abdulzahra, CR 14-634-SJO, and information related to me by other law enforcement officials and witnesses. The affidavit is intended to show that there is probable cause for the requested arrest warrant and criminal

1

complaint and does not purport to set forth all of my knowledge of, or investigation into, this matter.

### III.   STATEMENT OF PROBABLE CAUSE

    4.    Defendant ABDULZAHRA ("defendant") was previously charged in case number CR 14-634-SJO with violations of 18 U.S.C. § 371 (Conspiracy to Defraud the United States) and 18 U.S.C. § 1425(a) (Procurement of Citizenship and Naturalization Unlawfully). A copy of the criminal complaint originally filed in that matter and a copy of the charging Information are both attached hereto, as Exhibits A and B, respectively.

    5.    Based on my review of the files and records in CR 14-634-SJO, including the court docket for that matter, I know the following:

    a.    On February 4, 2015, defendant entered a plea of guilty to the charges against him in the Information. A copy of the plea agreement is attached hereto as Exhibit C. As part of the plea agreement, defendant agreed to voluntarily remove himself from the United States within six months of the date of imposition of sentence. (See Exh. C, ¶ 2.h.) Defendant also admitted to an extensive factual basis which included the conduct at issue in the instant Complaint. (Id., pp. 15-18.)

    b.    In exchange, the government agreed not to further criminally prosecute defendant for violations of federal law arising out of defendant's conduct described in the factual basis, including violations of 18 U.S.C. § 1028A (Aggravated Identity Theft); 18 U.S.C. § 1621 (Perjury); 18 U.S.C. § 1015(a) (False Statement in a Naturalization, Citizenship or Alien Registry Matter); 18 U.S.C. § 1546(a) (Fraud and Misuse of Visas, Permits, and Other Documents); and 18 U.S.C. § 1001 (False Statements and Writings to a Government Agency). (See id., ¶ 3.d.).

    c.    Defendant was sentenced on April 18, 2016 to three years of probation and a fine of $2,500. The court also ordered defendant to remove himself from the United States, consistent with the terms of the plea agreement, within six months of the date of the sentencing hearing.

       d.      Defendant filed seven requests for extension of time to remove himself from the United States. Defendant's last request was denied by the Court, and the last extension granted by the Court expired on February 1, 2018. Several hearings have been held before the Honorable S. James Otero regarding this matter since January 29, 2018.

       e.      The government filed a Notice of Breach of the Plea Agreement on March 6, 2018. Defendant filed an opposition, and Judge Otero held a hearing on the matter on March 26, 2018, at which the Court declared the defendant to be in breach of the plea agreement, and relieved the government of all of its obligations under the plea agreement. A copy of the Court's order is attached hereto as Exhibit D.

      6.      Based upon the information set forth in the affidavit in support of the original Complaint filed in this matter and the factual basis as agreed by defendant in the plea agreement and admitted by defendant at the hearing on his change of plea, there is probable cause to believe that defendant has committed violations of 18 U.S.C. § 1028A (Aggravated Identity Theft) and 18 U.S.C. § 1621 (Perjury). In particular, as admitted by defendant in the factual basis:

> [D]efendant made material false statements under penalty of perjury in connection with his Application for Naturalization ("Form N-400") and in interviews with Immigration Services Officers held on August 3, 2009 and November 17, 2010.[1] These false statements included at least the following: (1) that defendant had been living in marital union with the same U.S. citizen for the prior three years; (2) that defendant had never committed any crime for which he had not been arrested; (3) that defendant had never helped anyone enter the United States illegally; and (4) that defendant had never given false or misleading information to any U.S. government official while applying for any immigration benefit. Each of these statements was false, fictitious, and fraudulent because, as defendant then well knew, the following facts were true: (1) defendant had not been living in marital union with the same U.S. citizen for the prior three years, and in fact had never lived with the U.S. citizen to whom he claimed to be married; (2) defendant had committed crimes for which he had not been arrested, including by entering into a fraudulent marriage for the purpose of obtaining immigration benefits and by making false statements on his prior immigration applications; (3) defendant had helped co-defendant ZHHEERA enter the United States illegally by arranging for

---

[1] To the extent any statute of limitation would be at issue at this point in this case, defendant waived any such defense pursuant to the plea agreement. See Exh. C, ¶ 24.

a fictitious marriage to a United States Citizen and obtaining entry documents based on that marriage; and (4) defendant had given false and misleading information to government officials while applying for immigration benefits, including false statements concerning his marriage to a U.S. citizen.

In connection with his N-400 and subsequent interviews, and therefore during and in relation to his commission of the offense set forth in count two of the Information, defendant used the name, date of birth, address, and other identifying information of R.G., a United States citizen with whom he purported to be in a bona fide marital relationship at the time he applied for citizenship, but with whom he in fact had never lived and was not in a bona fide marital relationship.

Further, on or about July 28, 2011, defendant made material false statements on his Form N-445/Notice of Naturalization Oath Ceremony, and affirmed such statements to an immigration official, including the following: that after the date defendant was first interviewed regarding his Form N-400, that is, August 3, 2009, he: (1) had not been divorced; (2) had not knowingly committed any crime or offense for which he had not been arrested; and (3) had not given any false testimony to obtain immigration benefits. Each of these statements was false, fictitious, and fraudulent because, as defendant then well knew, the following were true: (1) defendant was divorced from his U.S. citizen spouse on or about April 26, 2011; (2) defendant had knowingly committed crimes for which he had not been arrested, including by making false statements under oath at his second interview regarding his Form N-400 application, on November 17, 2010; and (3) defendant had given false testimony to obtain immigration benefits, including during his second interview regarding his Form N-400 application, on November 17, 2010.

(Exh. C, pp. 17-18.)

7.      Throughout the proceedings in this matter, Judge Otero has repeatedly observed that defendant has made misrepresentations to the government and to the court and that his statements cannot be relied upon. Transcripts of three of the recent hearings are attached hereto as Exhibit E. For example, Judge Otero observed the following:

a.      "Let me just make it clear that the history of the defendant as referenced in the plea agreement and as referenced in the PSR, the presentence investigation report, is a history of falsification, misstatements, lying, fraud." (Exh. E., RT 2/5/18: 6.)

4

        b.      "There's so much fraud, Mr. Abdulzahra, that you've committed over the years. Almost every time you open your mouth or place a matter in terms of a document, if you write a document, you can't be trusted, and so you've proved that over and over and over again...[I]t appears that you also hoodwinked the public defender's office over time." (Id. RT 2/5/18: 12.)

        c.      "[I]n the past [defendant] was asking for time to sell his real property, unwind, dispose of his assets, and he's never represented to the Court that he was pursuing a patent in the United States. That's another material omission. That's another example of his lying by not disclosing this to the Court in the past or to his counsel, I would assume, and this comes up probably as no surprise, but it's just another example of his efforts to defraud." (Id. RT 2/5/18: 15-16.)

        d.      "What I'm hearing is that over the last, I guess, two and a half years since the matter has been before this Court, Mr. Abdulzahra has not made any concrete plans to remove himself from the United States...This comes as no surprise. I'm really not surprised that Mr. Abdulzahra has not made good-faith efforts to comply with the plea agreement in light of the stipulations in the plea agreement regarding the number of fraudulent acts and statements made over a number of years and conduct by Mr. Abdulzahra." (Id. RT 2/8/18: 5-6.)

        e.      "I'm concerned about Mr. Abdulzahra being a flight risk, not from the country, from this Court, so I have some concerns about that also." (Id. RT 2/8/18: 7.)

//
//

## IV.  **CONCLUSION**

8.      Based on the above information, I believe there is probable cause to believe that

HAZIM ABDULZHARA committed violations of 18 U.S.C. § 1028A (Aggravated Identity

Theft) and 18 U.S.C. 1621 (Perjury).


LOAN MCINTOSH
Special Agent, Homeland Security
Investigations

Subscribed to and sworn before me
this 3rd day of April, 2018.


HONORABLE SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>HAZIM ABDULZAHRA,<br>aka "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim AbdulrithaAbdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra,"<br>SABA ZHHEERA,<br>aka "Saba Tohala," aka "Saba Salih Tohala," aka Saba Salh Tohala," aka "Saba Salh Zahaira," aka "Saba Naji Zhayra," aka "Saba Salh Zaheera," aka "Saba Naji Zhheera," aka "Saba Salih Naji Zhheera," aka "Saba Zeehhera," aka "Saba Alzahaira," aka "Siba Salih Naji Zuhayrah" | DOCKET NO.<br><br>**14 - 1987M**<br><br>MAGISTRATE'S CASE NO.<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br><br>OCT 6 2014<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ DEPUTY |

| Complaint for violation of Title 18, United States Code, Section 371 | | |
|---|---|---|
| NAME OF MAGISTRATE JUDGE<br>HONORABLE ALICIA G. ROSENBERG | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
| DATE OF OFFENSE<br>From unknown date prior to 4/30/06 to 8/8/14 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 371]

Beginning on an unknown date prior to April 30, 2006, and continuing through on or about August 8, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant HAZIM ABDULZAHRA, also known as ("aka") "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha Abdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra," and defendant SABA ZHHEERA, aka "Saba Tohala," aka "Saba Salih Tohala," aka "Saba Salh Tohala," aka "Saba Salh Zahaira," aka "Saba Naji Zhayra," aka "Saba Salh Zaheera," aka "Saba Naji Zhheera," aka "Saba Salih Naji Zhheera," aka "Saba Zeehhera," aka "Saba Alzahaira," aka "Siba Salih Naji Zuhayrah" conspired and agreed with each other, and others, to knowingly and intentionally defraud the United States by obstructing the lawful functions of United States Citizenship and Immigration Services by deceitful and dishonest means.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Loan McIntosh-Rupp |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – United States Department of Homeland Security, HSI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br><br>ALICIA G. ROSENBERG | DATE<br>October 6, 2014 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Cameron Schroeder, ext. 0596   REC: Detention

I.      INTRODUCTION ......................................................................................... 1

II.     CRIMINAL VIOLATION............................................................................. 1

III.    FACTS ESTABLISHING PROBABLE CAUSE ......................................... 1

        A.      SUMMARY OF PROBABLE CAUSE.......................................... 2

        B.      BACKGROUND REGARDING THE IMMIGRATION PROCESS............................. 3

        C.      INTERVIEWS WITH U.S. CITIZEN SPOUSES .......................... 4

                1.      Interview with R.G........................................................... 4

                2.      Interview with H.T. .......................................................... 6

        D.      ABDULZAHRA'S IMMIGRATION FILE AND RELATED
                DOCUMENTS.................................................................................. 7

        E.      OTHER ADDRESS INFORMATION FOR ABDULZAHRA...................... 12

        F.      TRAVEL RECORDS FOR ABDULZAHRA .............................. 15

        G.      ZHHEERA'S IMMIGRATION FILE AND RELATED RECORDS........................... 17

        H.      ZHHEERA'S FIRST I-751 INTERVIEW..................................... 20

        I.      ZHHEERA'S SECOND I-751 INTERVIEW ............................... 22

        J.      TRAVEL RECORDS FOR ZHHEERA....................................... 22

        K.      OTHER ADDRESS INFORMATION FOR ZHHEERA............................ 24

        L.      SURVEILLANCES CONDUCTED ON ABDULZAHRA AND
                ZHHEERA ...................................................................................... 25

        M.      SEARCH WARRANT AT 53014 SWEET JULIET LANE, LAKE
                ELSINORE ...................................................................................... 26

IV.     CONCLUSION........................................................................................... 28

## AFFIDAVIT

I, Loan McIntosh-Rupp, being duly sworn, state:

### I.   INTRODUCTION

1.      I am a Special Agent ("SA") with the United States Department of Homeland
Security, Homeland Security Investigations ("HSI"). I have been an SA with HSI, formerly
known as Immigration and Customs Enforcement ("ICE") and the United States Customs
Service ("USCS"), since February 1995. I am presently assigned to HSI Group I in Northridge.
Prior to my current assignment, I was assigned to the HSI Document & Benefit Fraud group and
the HSI Joint Terrorism Task Force ("JTTF") in Los Angeles. I was also previously assigned to
the National Intellectual Property Rights Coordination Center in Washington, D.C., USCS
Attaché Philippines, and HSI Attaché Bangkok. As an HSI/ICE/USCS SA, I have conducted
criminal investigations involving trade fraud, money laundering, narcotics trafficking, violations
of the Protect Act, illegal exports, immigration fraud, and intellectual property crimes.

### II.   CRIMINAL VIOLATION

2.      This affidavit is made in support of arrest warrants and a criminal complaint
charging Hazim ABDULZAHRA ("ABDULZAHRA"), also known as ("aka") "Hazim
Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul
Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha
Abdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra," and SABA ZHHEERA, a.k.a. "Saba
Tohala," aka "Saba Salih Tohala," aka "Saba Salh Tohala," aka "Saba Salh Zahaira," aka "Saba
Naji Zhayra," aka "Saba Salh Zaheera," aka "Saba Naji Zhheera," aka "Saba Salih Naji
Zhheera," aka "Saba Zeehhera," aka "Saba Alzahaira," aka "Siba Salih Naji Zuhayrah"
("ZHHEERA"), with a violation of 18 U.S.C. § 371, Conspiracy to Defraud an Agency of the
United States.

### III.   FACTS ESTABLISHING PROBABLE CAUSE

3.      The facts set forth in this affidavit are based on my personal observations and
training, and, where noted, information related to me by other law enforcement officials and

1

witnesses.  The affidavit is intended to show that there is probable cause for the requested arrest warrants and criminal complaint and does not purport to set forth all of my knowledge of, or investigation into, this matter.

### A.     SUMMARY OF PROBABLE CAUSE

4.     Based upon the information set forth in detail below, I believe there is probable cause to believe that ABDULZAHRA and ZHHEERA, and others, conspired to defraud an agency of the United States.   Specifically, ABDULZAHRA and ZHHEERA have obstructed the lawful functions of United States Citizenship and Immigration Services ("USCIS") by deceitful and dishonest means, namely, by conspiring to seek, and seeking, immigration benefits for ZHHEERA through a fraudulent marriage to a U.S. citizen.

5.     ABDULZAHRA and ZHHEERA are both Iraqi citizens.  As described below, ABDULZAHRA entered into his own fraudulent marriage with R.G., a U.S. citizen, in 2004. Based on the marriage to R.G., ABDULZAHRA fraudulently obtained lawful permanent resident status for himself and attempted to fraudulently obtain U.S. citizenship.  In connection with his immigration applications, ABDULZAHRA repeatedly used R.G.'s personal identifying information, without lawful authority, in order to maintain the pretense that he was in a bona fide marriage to a U.S. citizen.  ABDULZAHRA also possessed and used documents he obtained based on false information for travel and reentry into the United States.

6.     In 2006, ABDULZAHRA sought to bring ZHHEERA to the United States to live as his true wife.  Because he could not obtain a visa or other status for ZHHEERA himself since he was already married, ABDULZAHRA arranged with H.T., another U.S. citizen, for H.T. to marry ZHHEERA.  ABDULZAHRA paid H.T. over $20,000 to travel to Jordan, meet ZHHEERA there, marry her in a civil ceremony in Jordan, and sponsor her visa and residency applications.

7.     ABDULZAHRA and ZHHEERA prepared, and H.T. signed, various documents in order to obtain entry into the United States for ZHHEERA, and then to obtain various immigration benefits, including permanent residency.  H.T.'s personal identifying information

2

was used, without lawful authority, in connection with ZHHEERA's immigration applications in order to maintain the pretense that she was in a bona fide marriage to a U.S. citizen.

8.      After ZHHEERA arrived in the United States, she and ABDULZAHRA proceeded to live together at a residence in Lake Elsinore, California, contrary to the information provided by each of them in various documents and applications submitted to USCIS.  Shortly after ZHHEERA arrived in this country, she and ABDULZAHRA were married in a religious ceremony (while each of them was still purportedly married to their respective U.S. citizen spouses).  ABDULZAHRA and ZHHEERA have a child together, born in 2011, and have divorced each of their U.S. citizen spouses.

9.      Based on their respective fraudulent marriages, ABDULZAHRA and ZHHEERA have made numerous false statements to USCIS, including false statements under oath, on their various immigration applications and interviews; have used the personal identifying information of their U.S. citizen spouses during and in relation to their fraudulent applications to USCIS without lawful authority; and have used their fraudulently obtained permanent residency cards for foreign travel and reentry into the United States.

## B.      BACKGROUND REGARDING THE IMMIGRATION PROCESS

10.      As an HSI SA, I am knowledgeable about the various legal methods by which a foreign citizen can remain in the United States.  An alien can obtain lawful permanent resident status, and ultimately United States citizenship, based on a bona fide marriage to a United States citizen.  A marriage entered into fraudulently to obtain an immigration benefit is a violation of 8 U.S.C. § 1325(c).  If an alien marries a United States citizen, the U.S. citizen can file a "Petition for Alien Relative," commonly referred to as a Form I-130, to obtain lawful status for his/her alien spouse.  Such a petition is filed with the Department of Homeland Security, Citizenship and Immigration Services.  (Prior to March 1, 2003, such a petition was filed with the Immigration and Naturalization Service ("INS"), Department of Justice.)  Once an I-130 is filed, the alien relative is allowed to remain in the United States until a decision is made on the petition. Usually, the alien simultaneously files a Form I-485, Application to Register Permanent

3

Residence or Adjust Status. Once the legitimacy of a marriage has been established, the I-130 is approved. The alien's I-485 application is then reviewed to determine eligibility to become a lawful permanent resident. If the alien appears eligible and has been married longer than two years, his/her I-485 is approved and s/he is granted resident status. This lawful status allows him or her to remain and work in the United States. If the alien has been married to the U.S. citizen spouse for less than two years, s/he is granted conditional resident status. After a period of two years, the alien and the U.S. citizen spouse can file an application to remove the conditions from the alien's permanent resident status (Form I-751), which process includes provision of information to establish the bona fide nature of the marriage. After having maintained lawful permanent status as a bona fide spouse of a U.S. citizen for three years, the alien can apply for U.S. citizenship via Form N-400, Application for Naturalization. In order to naturalize, the alien must show, among other things, that s/he was lawfully admitted as a permanent resident and that s/he has been a person of good moral character. An applicant for naturalization is precluded from establishing good moral character if, for example, s/he has provided false information for the purpose of obtaining an immigration benefit.

### C.   INTERVIEWS WITH U.S. CITIZEN SPOUSES

#### 1.   Interview with R.G.

11.     I have conducted several interviews with R.G. regarding her marriage to ABDULZAHRA. On May 21, 2014, R.G. told me what I believe to be accurate information, based on corroboration with other information described herein and learned during my investigation. R.G. told me the following, among other things:

a.      R.G. said that she met ABDULZAHRA in 2000. They got married in Las Vegas on October 28, 2004. She described that they were romantically involved, and that ABDULZAHRA asked her several times to marry him. She recalled that at one point, ABDULZAHRA showed her a document that indicated that he would be deported. R.G. eventually agreed to marry ABDULZAHRA, in part to help him with his immigration issues.

4

b.       R.G. stated that she and ABDULZAHRA have never lived together. R.G. described that she had hoped that they would eventually live together after their marriage, but that ABDULZAHRA kept putting off that possibility. She described that their relationship deteriorated after they got married, until she had very little contact with him at all. Eventually, ABDULZAHRA asked her for a divorce, and she agreed.

c.       R.G. stated that ABDULZAHRA has never financially supported her. She believes that he could have married her to get his green card. She helped him fill out some of his immigration paperwork, including by providing her personal information, but she had no involvement in his citizenship application, which also included her personal identifying information.

d.       R.G. stated that she was not aware of ABDULZAHRA's marriage to anyone else, and did not know that he was living with another woman during his marriage with R.G.

e.       Upon reviewing several of the documents obtained from ABDULZAHRA's immigration file or otherwise during the course of this investigation, R.G. said the following:

•       She confirmed that at least some of the tax return documents submitted by ABDULZAHRA to USCIS were fraudulent, and not the documents submitted to the IRS. I have confirmed by obtaining tax return information from the IRS that the 2007 tax return that ABDULZAHRA submitted to USCIS in support of his Form I-751 does not match the return that he submitted to the IRS for the tax year 2007.

•       R.G. reviewed a rental agreement that ABDULZAHRA had provided to USCIS in support of his Form N-400. R.G. stated that the signature was very similar to hers on the document; however, it was not hers. She also noticed that the landlord's name on the rental agreement was spelled incorrectly. She never resided at the indicated location with ABDULZAHRA.

5

•       The information on ABDULZAHRA's various immigration applications that purported to show that they were living together was not accurate.

•       Documents submitted with ABDULZAHRA's immigration applications that purported to show that they were living together, such as utility bills and car insurance records, were not accurate; they never lived together at the addresses indicated on these documents. R.G. admitted that she had agreed, at ABDULZAHRA's request, to put his name on some of her utility bills, even though he was not living with her.

2.      Interview with H.T.

12.     I have also conducted several interviews with H.T. regarding his marriage to ZHHEERA. After initially providing information that he later admitted was false, on May 14, 2014, H.T. told me what I believe to be accurate information, based on corroboration with other information described herein and learned during my investigation.  H.T. told me, among other things, the following:

a.      H.T. said that he met ABDULZAHRA at his cousin's residence in 2006. After several interactions, ABDULZAHRA offered to pay him $25,000 to marry ZHHEERA, a woman H.T. understood ABDULZAHRA to know from Iraq, and whom ABDULZAHRA himself wished to marry and bring to the United States. H.T. agreed.

b.      H.T. traveled to Jordan with ABDULZAHRA in order to marry ZHHEERA. While there, H.T. and ZHHEERA were married in a civil ceremony. ABDULZAHRA was present and paid for everything, as well as giving H.T. a few thousand dollars for his own use on the trip. Both H.T. and ABDULZAHRA took turns taking photographs with ZHHEERA so that there would be a record to show U.S. immigration authorities, but also a personal record to show the beginning of ABDULZAHRA's and ZHHEERA's own marital relationship.   After the wedding, H.T. returned to the United States.

c.      H.T. recalled signing immigration paperwork so that ZHHEERA could come to the U.S., and, later, adjust her status. He said that ABDULZAHRA and/or ZHHEERA

6

prepared and submitted everything, and he just provided his information and signed where needed.

   d. H.T. received two more payments from ABDULZAHRA for his participation in the marriage with ZHHEERA, totaling $20,000.

   e. When ZHHEERA arrived in the U.S., she went to live in ABDULZAHRA's house in what H.T. thought was Orange County.[1] H.T. has never resided with ZHHEERA at any of the addresses listed on her immigration applications, although some of the addresses are locations where he himself resided or were relatives' residences that he used as a mailing address.

   f. H.T. was present at ABDULZAHRA and ZHHEERA's religious wedding ceremony at the mosque, and recalled that he was requested to drive a van full of supplies for the party to the mosque.

   g. H.T. said that he had very little contact with ZHHEERA, and that he mostly dealt with ABDULZAHRA regarding ZHHEERA's immigration forms. He said that ABDULZAHRA requested that H.T. sign a divorce decree between him and ZHHEERA in 2010. He was aware that ABDULZAHRA and ZHHEERA lived together as husband and wife after ZHHEERA came to the United States.

## D. ABDULZAHRA'S IMMIGRATION FILE AND RELATED DOCUMENTS

   13. I conducted a review of the immigration file and records for ABDULZAHRA, A-File A073 854 135. Based on my review, I learned the following:

   a. On July 29, 1997, ABDULZAHRA entered the United States on a flight from Seoul, Korea and presented himself to an immigration inspector as an Iraqi citizen seeking asylum. He had no identification documents with him. On the same day, ABDULZAHRA provided a sworn statement to an INS officer. ABDULZAHRA was determined to be

---

[1] I believe this is a reference to the property owned by ABDULZAHRA located in Lake Elsinore, California, and discussed herein, although it is slightly east of Orange County.

inadmissible and ordered to be removed from the United States. ABDULZAHRA was remanded to the San Pedro Service Processing Center prior to a credible fear interview.

      b.     On August 13, 1997, ABDULZAHRA submitted a Form I-589, Application for Asylum and Withholding of Removal. ABDULZAHRA's request for asylum was granted on September 15, 1997.

      c.     On October 15, 1997, the U.S. Department of Justice, Executive Office for Immigration Review timely appealed the asylum decision. On May 1, 2003, the Bureau of Immigration Appeals ("BIA") overturned the asylum approval. ABDULZAHRA was ordered removed back to Iraq.

      d.     On May 14, 2003, the U.S. Court of Appeals received a petition for a stay of deportation for ABDULZAHRA. On July 13, 2004, a Warrant of Removal/Deportation was issued for ABDULZAHRA.

      e.     On December 3, 2004, USCIS received a Form I-130, Petition for Alien Relative, from R.G. on behalf of ABDULZAHRA. The Form I-130 indicated that R.G. and ABDULZAHRA were married on October 28, 2004 and were residing at 4573 Inglewood Blvd., Apt.3, Culver City, California 90230 (the "Inglewood Blvd. address"). (As noted above, R.G. has confirmed that although ABDULZAHRA lived at this address, she never resided there with him.) On February 3, 2005, the USCIS California Service Center ("CSC") approved the Form I-130.

      f.     On June 8, 2005, USCIS received a Form I-485, Application to Register Permanent Status or Adjust Status, from ABDULZAHRA. ABDULZAHRA signed the Form I-485 under penalty of perjury on June 2, 2005. In connection with the I-485, ABDULZAHRA submitted various documents purporting to demonstrate that he and R.G. lived together at the Inglewood Blvd. address, that they shared a joint bank account, filed taxes together, and shared car insurance. ADBULZAHRA's application was approved by USCIS on April 3, 2006, and he was granted conditional permanent resident status. In response to question #1, which asked: "Have you ever, in or outside the U.S. knowingly committed any crime of moral turpitude or a

drug related offense for which you have not been arrested?" ABDULZAHRA stated "No." (I believe that the provision of false information in order to receive immigration benefits would qualify as such an offense.) In response to question #10, which asked: "...[H]ave you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit?" ABDULZAHRA stated "No." (I believe that ABDULZAHRA's provision of false information regarding his and R.G.'s joint residence and otherwise bona fide marriage would constitute such a misrepresentation.)

       g.    On February 26, 2008, the USCIS Western Service Center ("WSC") received a Form I-751, Petition to Remove Conditions on Residence, from ABDULZAHRA. ABDULZAHRA and R.G. signed the Form I-751 under penalty of perjury on February 22, 2008. Even though there was no interview conducted by USCIS to establish that ABDULZAHRA and R.G. were in a bona fide marriage, the Form I-751 was approved at the USCIS Western Service Center on September 19, 2008. In response to Part 2, which asked: "Basis for Petition," ABDULZAHRA marked box "A," indicating "My conditional residence is based on my marriage to a U.S. citizen or permanent resident and we are filing this petition together." The form stated that both R.G. and ABDULZAHRA resided at 1144 S. Sierra Bonita Ave., Los Angeles, California 90019; it also indicated that ABDULZAHRA's mailing address was 5107 Venice Blvd., Los Angeles, California 90019. (As discussed herein, Ganal did not reside at the 1144 S. Sierra Bonita Ave. address, nor did ABDULZAHRA, and the 5107 Venice Blvd. address was a business address for ABDULZAHRA. Further, at the time this application was filed, ZHHEERA had already come to the United States, and I believe ABDULZAHRA was residing together with her at the Lake Elsinore residence, not with Ganal, and not at the residence indicated on ABDULZAHRA's immigration forms.) Together with the form, ABDULZAHRA also provided a copy of a lease agreement purportedly for 1140 S. Sierra Bonita Ave, Los Angeles, California (it is unclear why the address on this lease agreement did not match the address provided on the I-751 form itself; in any case, as described below, the agreement appears to be fraudulent.) Finally, the I-751 form further asked, "Have you ever been arrested, detained,

9

charged, indicted, fined or imprisoned for breaking or violating any law or ordinance (excluding traffic regulations), or committed any crime for which you were not arrested in the United States or abroad?" ABDULZAHRA checked "No." (I believe that ABDULZAHRA's provision of false information on the I-751 itself and in connection with prior immigration applications, as well as his participation in ZHHEERA's false marriage, would constitute crimes for which he had not been arrested; he was also detained upon his initial entry into the United States without documentation, which he did not report).

        h.     On January 15, 2009, USCIS received a Form N-400, Application for Naturalization, from ABDULZAHRA. ABDULZAHRA signed the Form N-400 under penalty of perjury on December 29, 2008. ABDULZAHRA's Form N-400 was denied on August 12, 2014, after having been initially approved and then the approval being withdrawn as a result of this investigation. On the Form N-400, ABDULZAHRA provided additional false and misleading information:

        •     ABDULZAHRA stated his home address was XXXX[2] San Vicente Blvd., Los Angeles, California 90019, and his mailing address was 5107 Venice Blvd., Los Angeles, California. I am aware from property records and from R.G. that while R.G. resides at the XXXX San Vicente Blvd. address, ABDULZAHRA has never resided there. I am aware from my investigation that 5107 Venice Blvd., Los Angeles, California is the location of a business owned and operated by ABDULZAHRA.

        •     ABDULZAHRA stated his spouse was [R.G.], and provided her identifying information, including her date of birth and Social Security Number. ABDULZAHRA stated as the basis for his eligibility to apply for citizenship that he had been married to and living with the same U.S. citizen for the last three years (even though R.G. and property records confirm that he had not been living with R.G. – during the prior three years or at any other time). ABDULZAHRA also indicated on the form that he had only been married once.

---

[2] Numbers redacted to protect privacy.

i.      ABDULZAHRA was interviewed under oath regarding his naturalization application on August 3, 2009. ABDULZAHRA made no changes to the statements outlined above. At the interview, ABDULZAHRA signed the application again and swore under penalty of perjury that the contents of his application were true and correct. ABDULZAHRA was interviewed under oath a second time regarding his naturalization application on November 17, 2010. ABDULZAHRA again made no changes to the statements outlined above, and again signed the application and swore under penalty of perjury that the contents of his application were true and correct.

j.      ABDULZAHRA was scheduled for a third naturalization interview on August 8, 2014. ABDULZAHRA did not show up for this scheduled interview and instead sent a letter to USCIS dated August 6, 2014, requesting that his N-400 application be withdrawn.

k.      ABDULZAHRA provided a number of documents in connection with his N-400 application that purported to show that he was married to and living with R.G., and had been for the prior three years, as required. These documents included utility bills, tax returns, car insurance policy documents, bank statements, and an undated letter from R.G. describing their marriage. As noted above, I believe these documents contain false and misleading information because they purport to show that ABDULZAHRA was living with R.G. when in fact he was not, and that they were engaged in a bona fide marital relationship, when in fact ABDULZAHRA was living with his true wife, ZHHEERA. [3]

### E.   OTHER ADDRESS INFORMATION FOR ABDULZAHRA

14.     As part of my investigation, I obtained and reviewed Consolidated Lead Evaluating and Reporting ("CLEAR") records for ABDULZAHRA. CLEAR contains comprehensive information about residential addresses. I learned the following:

---

[3] It should also be noted that the tax return documents submitted with ABDULZAHRA's immigration applications reflect his income to be substantially less than he claimed on mortgage applications I have obtained for the property at 53014 Sweet Juliet Lane, Lake Elsinore, California.

- In response to question #15, which asked: "Have you **ever** committed a crime or offense for which you were **not** arrested? ABDULZAHRA stated: "No." As noted above, I believe ABDULZAHRA has committed several crimes in connection with his own and ZHHEERA's immigration processes for which he was not arrested.

- In response to question #16, which asked: "Have you ever been arrested, cited or detained by an law enforcement officer (including USCIS or former INS and military officers) for any reason? ABDULZAHRA stated: "No." As noted above, ABDULZAHRA was detained by former INS officers when he first entered the United States and sought asylum.

- In response to question #22.d., which asked: "Have you ever...been married to more than one person at the same time?" ABDULZAHRA stated: "No." As noted above, he was married to both R.G. and ZHHEERA at the same time, although the second marriage was pursuant to a religious ceremony only.

- In response to question #22.e., which asked: "Have you ever...helped anyone enter or try to enter the United States illegally?" ABDULZAHRA stated: "No." As described herein, I believe ABDULZAHRA helped ZHHEERA enter the United States on a visa obtained through false information based on her fraudulent marriage to H.T.

- In response to question #23, which asked: "Have you EVER given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" ABDULZAHRA stated: "No." As noted, I believe that ABDULZAHRA has repeatedly provided false and misleading information to USCIS officials while applying for immigration benefits.

- In response to question #27, which asked: "Have you ever been ordered to be removed, excluded, or deported from the United States?" ABDULZAHRA stated: "No." As noted above, ABDULZAHRA was ordered removed on May 1, 2003; a copy of this order was found during a search of the Lake Elsinore residence on November 29, 2012.

11

a.      ABDULZAHRA has resided at 53014 Sweet Juliet Lane, Lake Elsinore, California since February 2007. (This address is not listed on any of his immigration forms.)

b.      ABDULZAHRA has been the owner of a business identified as City Mart, located at 5107 Venice Blvd., Los Angeles, California, from November 30, 1999 until the present date (this was the address listed on ABDULZAHRA's N-400 citizenship application as his mailing address).

c.      ABDULZAHRA resided at 4573 Inglewood Blvd., Apt. 3, Culver City, California from February 2002 until he sold it in June 2007 (this was the address listed on his I-130 and I-485 applications).

d.      ABDULZAHRA  resided at address 1144 Sierra Bonita Ave., Apt. 3, Los Angeles, California 90019 from 2000 until February 2004 (this was the address listed on his I-751 application as his residence in February 2008).

15.     As part of my investigation, I reviewed certified San Bernardino property records. I learned the following:

a.      On February 8, 2007, ABDULZAHRA purchased 53014 Sweet Juliet Lane, Lake Elsinore, California 92532.

b.      On February 9, 2007, R.G. appears to have signed an Interspousal Transfer Grant Deed, relinquishing all of her rights and interest of this property to ABDULZAHRA. (R.G. reported that she does not recall signing this form.)

c.      On December 29, 2006, ABDULZAHRA purchased 5107 Venice Blvd., Los Angeles, California 90019.

d.      On December 26, 2006, R.G. appears to have signed an Interspousal Transfer Grant Deed relinquishing all of her rights and interest of this property to ABDULZAHRA. (As above, R.G. does not recall signing this form.)

16.     On July 29, 2011, I spoke to Young Yun, the manager of San Sierra Apartments regarding the rental of 1140 S. Sierra Bonita Ave, Los Angeles, California (i.e. the address on the lease agreement ABDULZAHRA submitted in connection with his I-751 petition), 1144 S.

Sierra Bonita Ave., Apartment 3, Los Angeles, California (i.e. the address actually listed on
ABDULZAHRA's I-751 form), and XXXX San Vicente Blvd., Los Angeles, California 90019
(i.e. the address on ABDULZAHRA'S N-400 application).  Yun told me the following:

        a.     ABDULZAHRA lived at 1144 Sierra Bonita Ave., Apartment 3, from the
year 2000 until he moved in February 2002, but not in 2008 (when the I-751 was filed).

        b.     R.G. and her daughter resided at 1140 Sierra Bonita, Apartment 7, Los
Angeles, California for six to seven years before moving.  In February 2008, R.G. was still
residing there with her daughter.  ABDULZAHRA has never resided at this location with R.G..

        c.     R.G. told him sometime in 2006 that she married ABDULZAHRA.  Yun
asked R.G. if her marriage to ABDULZAHRA benefitted her or ABDULZAHRA.  Yun
suspected the marriage was for ABDULZAHRA to get a green card.  In response to this, R.G.
said that the marriage benefitted both of them.

        d.     Yun initially said that both ABDULZAHRA and R.G. never lived at
XXXX San Vicente, Blvd., Los Angeles, California 90019 and that he did not think that anyone
lived there.  However, during a follow up visit, Yun admitted that R.G. (but not
ABDULZAHRA) was actually residing at XXXX San Vicente Blvd., Los Angeles, California
90019.  Yun admitted that he was not truthful about this information during our prior
conversation.

     17.     As part of my investigation, I reviewed leasing records from Mai Management,
the company that manages these three properties, and interviewed Don Imel, President of Mai
Management Associates.  I learned the following:

        a.     R.G. and her daughter resided at 1140 S. Sierra Bonita Ave., Apt. 7, Los
Angeles, California starting on June 15, 2004 until October 1, 2006.  There was no record of
ABDULZAHRA residing at this location.  Under "Personal References" on the lease
application, R.G. listed ABDULZAHRA as a "close friend" and provided his address as 4373
Inglewood Blvd (i.e. ABDULZAHRA's actual address until he bought the property in Lake
Elsinore).

14

   b. The rental agreement for XXXX San Vicente Blvd., Los Angeles, California (i.e. the address that ABDULZAHRA listed on his Form N-400) was completed by R.G. on September 30, 2006. The occupancy started on October 1, 2006. The occupants were listed as only R.G. and her daughter. Noted on the rental agreement was "Transfer from 1140 S. Sierra Bonita, Apt. 7, from June-15-04."

   c. In addition to the request for the rental agreements, Imel was asked to authenticate the rental agreement that ABDULZAHRA had provided to USCIS in support of his Form I-751 for 1140 S. Sierra Bonita Ave., Apt. 7, Los Angeles, CA 90019 (indicating that he and R.G. resided at this location). Imel told me that he reviewed the rental agreement and concluded that it was not issued by Mai Management: he noted that the address listed for Mai Management was incorrect, and the landlord's name was spelled wrong. Imel further confirmed that during this time, R.G. was already residing at XXXX San Vicente Blvd., Los Angeles, CA. There was no record of ABDULZAHRA and R.G. residing at 1140 S. Sierra Bonita Ave., Apt. 7, Los Angeles, California during this time.

## F. TRAVEL RECORDS FOR ABDULZAHRA

  18. As part of my investigation, I reviewed Treasury Enforcement Communications System ("TECS") travel records for ABDULZAHRA. TECS can be used to monitor international travel. I learned the following relevant information:

   a. On July 6, 2007, ABDULZAHRA departed John F. Kennedy International Airport ("JFK") and arrived at Queen Alia International Airport (AMM) in Jordan. ABDULZAHRA traveled with an Iraqi passport. On July 18, 2007, ABDULZAHRA departed AMM and arrived at Chicago O'Hare International Airport ("ORD"), traveling on his Iraqi passport and using his fraudulently obtained United States green card to enter the United States. Travel records also revealed that ZHHEERA entered the United States on the same day and flight number.

   b. On November 29, 2010, ABDULZAHRA departed Long Beach Seaport on a cruise ship en route to Mexico. On December 3, 2010, ABDULZAHRA arrived back at the

Long Beach Seaport, again traveling on his fraudulently obtained green card. As noted below, ZHHEERA traveled on this same itinerary. ZHHEERA and ABDULZAHRA were booked in the same cabin together for the duration of the trip. (ABDULZAHRA was still married to R.G. during this time.)

        c.     Upon entry on December 3, 2010, CBP officer Sergio Tobias conducted a secondary inspection of ABDULZAHRA and ZHHEERA. ABDULZAHRA said that he and ZHHEERA were co-workers and that his wife could not make the trip because she had health issues. ZHHEERA stated on her Form 6059B (Customs Declaration) that her U.S. address was 53014 Sweet Juliet Lane, Lake Elsinore, California. ABDULZAHRA stated on his Form 6059B that his U.S. address was 5107 Venice Blvd., Los Angeles, California (i.e. the location of his business).

        d.     On April 22, 2012, ABDULZAHRA departed Los Angeles International Airport ("LAX") and arrived at Ataturk International Airport ("IST") in Turkey. ABDULZAHRA traveled with his Iraqi passport. On June 2, 2012, ABDULZAHRA departed IST and arrived at LAX, and again was admitted to the United States through the use of his fraudulently obtained green card. ZHHEERA was again traveling on the same flight.

        e.     On June 2, 2012, CBP officer Ravniel Shankar conducted a secondary inspection of ABDULZAHRA and ZHHEERA. During the inspection, ABDULZAHRA stated that he traveled to Iraq to conduct business, and to visit his family. ABDULZAHRA stated that his email address was hazimsky@yahoo.com and his home address was 53014 Sweet Juliet Lane, Lake Elsinore, California 92532.

        f.     On December 11, 2013, December 28, 2013, February 27, 2014, and April 13, 2014, ABDULZAHRA conducted additional crossings of the U.S. border with his Iraqi passport and fraudulently obtained U.S. green card.

### G.    ZHHEERA'S IMMIGRATION FILE AND RELATED RECORDS

19.    I conducted a review of the immigration file and records for ZHHEERA, A-File A096 382 382, as well as records from the U.S. Department of State ("DOS"). Based on my review, I learned the following:

a.    On or about May 2, 2006, the DOS office in Damascus, Syria received a DS-156, Nonimmigrant Visa Application from "Saba Naji Zhayra" (ZHHEERA) for a tourist visa.[4]  On the DS-156, ZHHEERA stated that she was married to "Wasam Kalid."[5]  The purpose of her trip purportedly was for medical treatment for her father, who would be traveling with her. On the application, ZHHEERA attested that she had never sought to obtain any visa, entry into the U.S. or any other U.S. immigration benefit by fraud or willful misrepresentation or other unlawful means.  The application was refused by the DOS on May 2, 2006.

b.    On or about May 9, 2006, the DOS in Damascus, Syria received another DS-156, Nonimmigrant Visa Application from "Saba Naji Zhayra" (ZHHEERA) for a tourist visa.  On the DS-156, ZHHEERA stated that she was married to "Wasamkalid Abdulzahra," and the U.S. address that she was visiting was "4573 Inglewood Bl #3, Culver City, CA 90230" (i.e. the address at which ABDULZAHRA actually resided at this time).  The name of the contact person she would be staying with in the United States with was "Hazim Abdulzahra" (i.e. ABDULZAHRA).  The purpose of her trip was purportedly for medical treatment.  Her father would be traveling with her.   The application was signed by Hazim Abdulzahra (ABDULZAHRA) as the preparer of the application on May 7, 2006.  ABDULZAHRA was identified on the application as ZHHEERA's brother-in-law.  On the application, ZHHEERA again attested that she had never sought to obtain any visa, entry into the U.S. or any other U.S. immigration benefit by fraud or willful misrepresentation or other unlawful means.  The application was refused by the DOS on May 9, 2006.

---

[4] This date is approximately five months before ABDULZAHRA and H.T. traveled to Jordan so that H.T. could marry ZHHEERA.

[5] I am aware from my investigation that this name is similar to that of ABDULZAHRA's brother; I have seen no records reflecting any such prior marriage for ZHHEERA, however.

    c.    On November 9, 2006, USCIS in Amman, Jordan received a Form I-129F, Petition for Alien Fiancée from H.T., and submitted on behalf of ZHHEERA. H.T. signed the Form I-129F under penalty of perjury on October 11, 2006. The Form I-129F was approved on February 9, 2007. On the Form I-129F, H.T. stated his U.S. address was 24322 Alyssum Place, Valencia, California 91354. H.T. stated he married Saba Zaheera (ZHHEERA) on October 4, 2006.

    d.    On October 26, 2006, USCIS received a Form I-130, Petition for Alien Relative from H.T., submitted on behalf of Saba Zaheera (ZHHEERA). H.T. signed the Form I-130 under penalty of perjury on October 11, 2006. The Form I-130 was approved by USCIS on February 9, 2007. H.T. stated his marriage to ZHHEERA occurred on October 4, 2006, at Wadisseir, Jordan.

    e.    On November 8, 2007, USCIS received a Form I-485, Application to Register Permanent Residence or Adjust Status, from ZHHEERA. ZHHEERA signed the Form I-485 under penalty of perjury on October 27, 2007. ZHHEERA's application was approved by USCIS on March 12, 2008, and she was granted conditional permanent resident status. On the Form I-485, ZHHEERA stated her address was 27902 Sycamore Creek Drive, Valencia, California. (According to H.T., this was at one time his address, however, ZHHEERA has never resided here.) In response to question #1, which asked: "Have you ever, in or outside the U.S., knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested?" ZHHEERA stated "No." (I believe that providing false information in visa and immigration applications would qualify as such an offense.) In response to question #10, which asked: "...[H]ave you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit?" ZHHEERA stated "No." (I believe the above-described visa applications, the I-129 and I-130, and this instant I-485 application all contained willful misrepresentations of material fact, and that ZHHEERA had sought to procure, and had procured, visas, entry into the U.S., and immigration benefits based on such information.)

18

f.      On January 25, 2010, USCIS received a Form I-751, Petition to Remove Conditions on Residence (receipt #WAC1011500086), from ZHHEERA. ZHHEERA signed the Form I-751 under penalty of perjury on January 18, 2010. H.T. signed the Form I-751 under penalty of perjury purportedly on March 24, 2010 (this date is after the date on which USCIS received the document, however, so is likely inaccurate). In response to Part 2, which asked: "Basis for Petition," ZHHEERA marked box "A," indicating "My conditional residence is based on my marriage to a U.S. citizen or permanent resident, and we are filing this petition together." On the Form I-751, ZHHEERA stated her address was 28503 Las Canastas Drive, Valencia, California 91534. (This address was also used by H.T.; however, H.T. confirmed that ZHHEERA never lived there.) ZHHEERA stated her spouse's name was [H.T.]. In response to question #7 on the I-751 form which asked, "Have you ever been arrested, detained, charged, indicted, fine or imprisoned for breaking or violating any law or ordinance (excluding traffic regulations), or committed any crime for which you were not arrested in the United States or abroad?" ZHHEERA stated "No." (I believe that ZHHEERA's provision of false information on the I-751 itself, and on prior immigration and visa applications, would constitute such crimes.) In response to question #8, which asked: "If you are married, is this a different marriage than the one through which conditional resident status was obtained?" ZHHEERA stated: "No." (ZHHEERA thus failed to report her current (religious) marriage to ABDULZAHRA.)

g.      On August 29, 2013, USCIS sent a letter to ZHHEERA informing her of their intent to terminate her conditional permanent resident status, based on information learned during this investigation. In response, on or about September 26, 2013, ZHHEERA sent a letter to USCIS requesting that her I-751 petition be withdrawn. On October 24, 2014, USCIS terminated ZHHEERA's I-751 petition received under receipt number WAC1011500086.

h.      On October 9, 2013, USCIS received a second Form I-751, Petition to Remove Conditions on Residence (receipt #WAC1400750147), from ZHHEERA. ZHHEERA signed the Form I-751 under penalty of perjury on September 25, 2013. ZHHEERA's second

19

Form I-751 was denied by USCIS on August 20, 2014.  In response to question #20[6], which asked: "Have you ever been arrested, detained, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance (excluding traffic regulations), or committed any crime for which you were not arrested in the United States or abroad?" ZHHEERA again falsely stated "No."  In response to question #21, which asked: "If you are married, is this a different marriage than the one through which conditional resident status was obtained?" ZHHEERA again falsely stated: "No."  In response to Part 2, which asked: "Basis for Petition," ZHHEERA marked box "1.g.," indicating, "The termination of my status and removal from the United States would result in an extreme hardship."  Finally, in the section for her signature, ZHHEERA certified under penalty of perjury that the petition and the evidence submitted with it was all true and correct, and further certified that the marriage on which her conditional residence was based was entered in accordance with the laws of the place where the marriage took place, and "was not for the purpose of procuring an immigration benefit."

         i.      Along with the Form I-751, ZHHEERA provided a sworn declaration describing how the termination of her I-751 petition would purportedly result in extreme hardship, indicating that her (now terminated) marriage to H.T. would result in her persecution if she had to return to Iraq[7] because he was a Sunni Muslim and she is a Shiite Muslim.  She also stated that she has a son, M. Abdulzahra, and that she was <u>not</u> married to his father (i.e. ABDULZAHRA) at the time of his birth, although she lived with him.  Finally, ZHHEERA indicated in her statement that she completed the studies to become a licensed attorney in Iraq before coming to the United States.

## H.    ZHHEERA'S FIRST I-751 INTERVIEW

20.    On December 17, 2010, USCIS conducted an I-751 interview of ZHHEERA at the USCIS Los Angeles office in connection with her first I-751 application.  A video and audio

---

[6] The I-751 form changed somewhat between ZHHEERA's first and second submissions, so the question numbers are not the same.

[7] As described below, however, ABDULZAHRA and ZHHEERA traveled to Iraq earlier this year with their son.

recording of the interview was taken. After the interview, I spoke to ISO Juanita Quintero about ZHHEERA's I-751 interview. I also reviewed the video/audio recording and transcripts of interview. I learned the following:

      a.     ZHHEERA appeared for her I-751 without her spouse, H.T. The interview was conducted in English. ZHHEERA was informed that an audio/video recording would be taken of her interview and that she was going to be placed under oath. ZHHEERA indicated her assent and general understanding, although she appeared to struggle with English. She was placed under oath by the ISO.

      b.     ZHHEERA stated her spouse's name was [H.T.]. ZHHEERA could not recall her full address.

      c.     ZHHEERA said that she and H.T. first lived with a man named Mohammad. They then went to another address in Valencia. ZHHEERA said that they only lived at the Sycamore place on the weekends because her husband worked at Magic Mountain. During the week, they lived in Riverside. ZHHEERA said the place was called Lake Elsinore. ZHHEERA said that the owner of the home sometimes came to Lake Elsinore and sometimes he would go to L.A. ZHHEERA said, "The owner's name was Ha-- Haseem ."[8] ZHHEERA said that Haseem was married and lived in L.A. When asked who Haseem was married to, ZHHEERA said, "I don't see her."

      d.     When asked about proof of medical insurance with H.T., ZHHEERA answered, "I think, yes," but she could not provide a name for the insurance company. When asked about any cars that they had together, ZHHEERA answered that they had a small economy car. When asked about a checking account with her ex-husband, ZHHEERA answered, "Just for him. I don't."

      e.     When asked about the last vacation that she and her ex-husband took together, ZHHEERA answered "He don't have money." When asked what she did after

---

[8] I believe this to be a reference to Hazim ABDULZAHRA.

Thanksgiving, ZHHEERA first claimed she did nothing, but when pressed further about the day after Thanksgiving, answered that she went to Ensenada with "Haseem." ZHHERRA said that they went to Ensenada to buy and sell cars. ZHHEERA said "We, we went by a... What you call? The ship." When asked if Haseem's wife went on the trip, ZHHEERA answered, "She have to work and she have trouble like what called health issues."

          f.     ZHHEERA was asked if she ever paid anyone other than an attorney or the person who filled out her paperwork money for her green card. ZHHEERA answered, "No."

### I.    ZHHEERA'S SECOND I-751 INTERVIEW

    21.    On August 8, 2014, ZHHEERA appeared at USCIS for a second I-751 interview. The interview was conducted by ISO Amy Hansen. I spoke to ISO Hansen after the interview and learned the following:

          a.     ZHHEERA appeared for her I-751 interview with her attorney Juelles Carlos and an Arabic interpreter. ZHHEERA was informed that an audio/video recording would be taken of her interview and that she was going to be placed under oath. ZHHEERA agreed and was placed under oath by the ISO.

          b.     ZHHEERA invoked her Fifth Amendment rights when she was asked questions related to her ex-husband, H.T. ZHHERRA also invoked her Fifth Amendment rights when she was asked about the previous addresses at which she allegedly resided with her ex-husband.

### J.    TRAVEL RECORDS FOR ZHHEERA

    22.    As part of my investigation, I obtained and reviewed TECS travel records for ZHHEERA and learned the following:

          a.     On July 18, 2007, ZHHEERA departed AMM and arrived at ORD. ZHHEERA entered the United States on a K-3 immigrant visa ("Spouse of a U.S. citizen"). As noted above, TECS records also revealed that ABDULZAHRA was on the same flight on this date. H.T., though purportedly her new spouse, petitioning on her behalf, was not.

    b.    On January 2, 2009, ZHHEERA departed LAX and arrived at DXB. On May 4, 2009, ZHHEERA departed DXB and arrived at LAX, obtaining admission to the United States through the use of her fraudulently obtained green card.

    c.    Upon entry on May 4, 2009, CBP officials at LAX, conducted a secondary inspection of ZHHEERA. During the inspection, ZHHEERA could not recall her home address. According to ZHHEERA's submissions to USCIS during this time, she was purportedly residing with H.T. at 28503 Las Canastas Drive, Valencia, California. ZHHEERA did not know the details of her husband's employment and where he got money to support her. She only knew that her husband was a ride operator at Magic Mountain.

    d.    As part of my investigation, I obtained and reviewed the documents that ZHHEERA had in her possession upon her return on May 4, 2009. I learned that ZHHEERA had in her possession several email messages from "hazim zahra" using email address hazimsky@yahoo.com. In an email message dated April 11, 2009, which was sent from hazimsky@yahoo.com, is travel itinerary information for ZHHEERA to travel back to the United States on May 4, 2009. ZHHEERA also stated on a CBP Form 6059B (Customs Declaration) that her name was Saba Zhheera and that she resided at Sycamore Creek, Valencia, California. (This is similar to the address that ZHHEERA had reported in the I-485 she submitted in November 2007 to USCIS, and which was used at one point by H.T., but as described above, is not a residence at which ZHHEERA actually lived.)

    e.    On November 29, 2010, ZHHEERA departed Long Beach Seaport on Carnival Cruise, en route to Mexico. She arrived back at Long Beach Seaport on December 3, 2010, obtaining admission into the United States with her fraudulently obtained green card. As noted above, ABDULZAHRA traveled on this same cruise on these dates, staying in the same cabin.

    f.    On April 22, 2012, ZHHEERA departed LAX and arrived at IST. On June 2, 2012, ZHHEERA departed IST and arrived at LAX, obtaining admission to the United States through the use of her fraudulently obtained green card. As noted above,

ABDULZAHRA traveled on this same itinerary, although on a different flight number from IST to LAX.

        g.      On February 27, 2014, ZHHEERA departed LAX and arrived at DXB.[9] On April 13, 2014, ZHHEERA departed DXB and arrived at JFK, obtaining admission to the United States through the use of her fraudulently obtained green card. I am aware from a CBP inspection report that ABDULZAHRA stated that he and his common law wife (ZHHEERA) traveled with their son to Baghdad, Iraq together prior to arriving at JFK.

### K.    OTHER ADDRESS INFORMATION FOR ZHHEERA

      23.    As part of my investigation, I reviewed an admission application that ZHHEERA submitted to Riverside Community College on or about February 4, 2008. I am aware during this time ZHHEERA was still married to H.T. and purported in her immigration paperwork to be residing at 27902 Sycamore Creek Drive, Valencia, California. However, on the application, ZHHEERA stated that her home address was 53014 Sweet Juliet Lane, Lake Elsinore, California (i.e. the residence owned by ABDULZAHRA). ZHHEERA also stated that her contact number was (951) 691-0046 (i.e. a cell number registered to ABDULZAHRA).

      24.    As part of my investigation, I obtained and reviewed a CLEAR report for ZHHEERA. I learned the following:

        a.      There was no record of ZHHEERA using the address 24322 Alyssum Place, Valencia, California 91354 (i.e., the address that H.T. reported as his home address on the Form I-130, and where ZHHEERA should have gone once she arrived in the United States)

        b.      There was no record of ZHHEERA using the address 27902 Sycamore Creek Drive, Valencia, California (i.e, the address that ZHHEERA reported as her home address on the Form I-485)

---

[9] It should be noted that TECS only contains information regarding the initial point of international arrival or departure outside the U.S.; that is, it will reflect the flight from LAX to DXB (in this case), but not any further international travel information from DXB to any other location, or from any other location back to DXB before return travel to the United States.

c.     There was no record of ZHHEERA using the address 28503 Las Canastas Drive, Valencia, California 91534 (i.e., the address that ZHHEERA reported as her home address on the Form I-751).

d.     ZHHEERA used address 53014 Sweet Juliet Lane, Lake Elsinore, California 92532 from December 1, 2010 through April 5, 2013.

## L.     SURVEILLANCES CONDUCTED ON ABDULZAHRA AND ZHHEERA

25.     Starting on July 31, 2009, HSI special agents and I conducted surveillances on ABDULZAHRA and ZHHEERA. I learned the following:

a.     On July 31, 2009, starting at approximately 7:30 a.m., surveillance conducted at 53014 Sweet Juliet Lane, Lake Elsinore, California revealed two vehicles parked in the driveway. Both vehicles were registered to ABDULZAHRA. Agents also saw a male believed to be ABDULZAHRA and a female believed to be ZHHEERA at the residence. It should be noted that according to their respective forms on file with USCIS, ABDULZAHRA was purportedly living at 5710 San Vicente Blvd., Los Angeles, California (with R.G), and ZHHEERA was purportedly living at 28503 Las Canastas Drive, Valencia, California (with H.T.) at this time.

b.     On December 17, 2010, the day that ZHHEERA was scheduled for her I-751 interview, surveillance was conducted at 53014 Sweet Juliet Lane, Lake Elsinore, California starting at approximately 5:00 a.m. At approximately 6:50 a.m., agents observed ABDULZAHRA and ZHHEERA enter a white Kia SUV.

c.     On the same date, at approximately 7:00 a.m., surveillance was conducted at 28503 Las Canastas Drive, Valencia, California. (This was the address that ZHHEERA had reported on her Form I-751.) Agents saw a female that did not appear to resemble ZHHEERA exit the residence with a young child and depart the area.

d.     On the same date, at approximately 8:00 a.m., surveillance was conducted at 300 N. Los Angeles Street, Los Angeles, California 90012, the location of the USCIS offices. At approximately 8:30 a.m., ZHHEERA was observed entering the lobby of the building and

25

proceeding to the USCIS offices.  At approximately 10:40 a.m., ZHHEERA was observed

exiting the building where she was then picked up by ABDULZAHRA in the same Kia.

      e.     On November 2, 2012, at approximately 5:45 a.m., surveillance was

conducted at 53014 Sweet Juliet Lane, Lake Elsinore, California.  At approximately 6:15 a.m.,

agents observed ABDULZAHRA exit the front door and retrieve something from a car parked in

the driveway and then reenter the residence.  At approximately 10:50 a.m., agents again observed

ABDULZHARA exit the front door and step out onto the porch to smoke a cigarette.  During

that time, agents observed ZHHEERA walk past the front door.

## M.    SEARCH WARRANT AT 53014 SWEET JULIET LANE, LAKE ELSINORE

26.     On November 29, 2012, a federal search warrant was executed at the residence of

ZHHEERA and ABDULZAHRA, located at 53014 Sweet Juliet Lane, Lake Elsinore, California.

The following items, among others, were discovered:

      a.     A travel itinerary for passengers ABDULZAHRA and H.T. to travel to

Amman, Jordan on September 11, 2006 and return on September 27, 2006.

      b.     A DVD containing photographs of H.T. and ZHHEERA in what appears

to be a civil wedding ceremony performed in a private office.  Additional photographs show

ZHHEERA and H.T. posing with what look like family members.  There are also photographs of

ZHHEERA and ABDULZAHRA posing with the same people.  There are photographs of

ZHHEERA and ABDULZAHRA in what appear to be romantic poses.

      c.     A DVD titled "Hazim and Saba's Wedding," dated July 27, 2007.  The

DVD contains a video of a religious ceremony between ZHHEERA and ABDULZAHRA in a

mosque. During the ceremony, ABDULZAHRA places a ring on ZHHEERA's left ring finger.

ZHHEERA also places a ring on ABDULZAHRA's left ring finger.  The religious ceremony is

followed by a party.  H.T. is seen on the DVD as one of the guests at the party.

      d.     A DVD titled "Siba and Hazim's Wedding" that was dated September 2,

2007.  The DVD contains photographs of ZHHEERA and ABDULZAHRA in romantic poses.

The DVD also shows ZHHEERA and ABDULZAHRA dancing with guests while they are dressed in formal wedding attire. The DVD shows ZHHEERA and ABDULZAHRA and their guests on board a boat. The DVD ends with a formal reception in an unknown location.

        e.     A DVD containing a folder titled "images," dated October 19, 2007. This folder contains photographs of ABDULZAHRA and ZHHEERA white-water rafting. In a folder titled "LA," dated October 19, 2007, are photographs of ABDULZAHRA and ZHHEERA during the religious ceremony believed to have occurred on July 27, 2007. This folder also contains photographs of H.T., ABDULZAHRA and ZHHEERA posing together on the same day. In a folder titled "Picture," is an Islamic Marriage Contract between Hazim 'Abd-al-Rida 'Abd-al-Zahrah (i.e. ABDULZAHRA) and Siba Salih Naji Zuhayrah (i.e. ZHHEERA). The contract was signed on July 25, 2007.

        f.     A letter from "Hazim" to "Saba" dated September 2, 2007. In the letter ABDULZAHRA expresses his love for his wife "Saba."

        g.     A residential lease agreement dated January 30, 2007, between Bill Jasper, landlord of 24322 Alyssum Pl., Valencia, California and Saba Salih Zhheera/[H.T.] of 27902 Sycamore Creek Dr., Valencia, California. The lease agreement was for the rental of one room and one bath. It is unclear if the rental agreement was for the rental of 24322 Alyssum Place in Valencia or for 27902 Sycamore Creek Dr. in Valencia. The rental amount was listed as $475.00 starting on February 1, 2007. The rental agreement was purportedly signed by landlord Bill Jasper and tenants Saba Zhheera and H.T. (Based on the appearance of the information and the content of the document, I believe, based on my training and experience, that this is a fraudulent lease document.)

//

//

//

27

## IV.  CONCLUSION

27.    Based on the above described information, I believe there is probable cause to

believe that HAZIM ABDULZHARA and SABA ZHHEERA committed a violation of 18

U.S.C. § 371,  Conspiracy to Defraud an Agency of the United States.


LOAN MCINTOSH-RUPP
Special Agent, Homeland Security
Investigations

Subscribed to and sworn before me
this ___ day of October, 2014.

ALICIA G. ROSENBERG

HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

28

# EXHIBIT B

FILED

2014 NOV -5 PM 3: 49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>HAZIM ABDULZAHRA,<br>  aka "Hazim Abdulreda<br>    Abdulzahra,"<br>  aka "Hazim Abdul-reda<br>    Abdulzahra,"<br>  aka "Hazim Abdul Reda Abdul<br>    Zahra,"<br>  aka "Hazim A. Abdul-Zahra,"<br>  aka "Hazim Abdul-Ritha,"<br>  aka "Hazim Abdulritha<br>    Abdulzahra,"<br>  aka "Hazim 'Abd-al-rida 'Abd-<br>    al-Zahra"; and<br>SABA ZHHEERA,<br>  aka "Saba Tohala,"<br>  aka "Saba Salih Tohala,"<br>  aka "Saba Salh Tohala,"<br>  aka "Saba Salh Zahaira,"<br>  aka "Saba Naji Zhayra,"<br>  aka "Saba Salh Zaheera,"<br>  aka "Saba Naji Zhheera,"<br>  aka "Saba Salih Naji Zhheera,"<br>  aka "Saba Zeehhera,"<br>  aka "Saba Alzahaira,"<br>  aka "Siba Salih Naji<br>    Zuhayrah,"<br><br>            Defendants. | CR No. CR 14 00634<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy<br>to Defraud the United States;<br>18 U.S.C. § 1425(a):<br>Procurement of Citizenship and<br>Naturalization Unlawfully;<br>18 U.S.C. § 1546(a): Fraud and<br>Misuse of Visas, Permits, and<br>Other Documents] |

1       The United States Attorney charges:

2                      COUNT ONE

3                 [18 U.S.C. § 371]

4 **A.   OBJECT OF THE CONSPIRACY**

5       Beginning on an unknown date prior to April 30, 2006, and

6 continuing through on or about August 8, 2014, in Los Angeles

7 County, within the Central District of California, and

8 elsewhere, defendant HAZIM ABDULZAHRA, also known as ("aka")

9 "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra,"

10 aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra,"

11 aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha Abdulzahra," aka

12 "Hazim 'Abd-al-rida 'Abd-al-Zahra" ("defendant ABDULZAHRA"), and

13 defendant SABA ZHHEERA, aka "Saba Tohala," aka "Saba Salih

14 Tohala," aka "Saba Salh Tohala," aka "Saba Salh Zahaira," aka

15 "Saba Naji Zhayra," aka "Saba Salh Zaheera," aka "Saba Naji

16 Zhheera," aka "Saba Salih Naji Zhheera," aka "Saba Zeehhera,"

17 aka "Saba Alzahaira," aka "Siba Salih Naji Zuhayrah" ("defendant

18 ZHHEERA"), and others known and unknown to the United States

19 Attorney, conspired and agreed with each other to knowingly and

20 intentionally defraud the United States by obstructing the

21 lawful functions of United States Citizenship and Immigration

22 Services ("USCIS") by deceitful and dishonest means.

23 **B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE**

24       **ACCOMPLISHED**

25       The object of the conspiracy was to be accomplished in

26 substance as follows:

27       1.   Defendant ABDULZAHRA would assist defendant ZHHEERA in

28 providing false information on forms to be submitted to the

1  United States Department of State to attempt to obtain a visa

2  for defendant ZHHEERA to travel to the United States.

3      2.   Defendant ABDULZAHRA would help coordinate a marriage

4  between defendant ZHHEERA and a United States citizen for the

5  purpose of obtaining U.S. immigration benefits for defendant

6  ZHHEERA through fraud and false statements.

7      3.   Defendant ZHHEERA would marry the United States

8  citizen for the purpose of entering into, and obtaining

9  immigration benefits in, the United States.

10      4.   Defendant ZHHEERA and defendant ABDULZAHRA would

11  provide false information regarding defendant ZHHEERA's marriage

12  and residence on forms defendant ZHHEERA submitted to USCIS in

13  connection with defendant ZHHEERA's attempts to obtain U.S.

14  immigration benefits.

15      5.   Defendant ZHHEERA and defendant ABDULZAHRA would

16  create and submit false documents to USCIS in connection with

17  defendant ZHHEERA's attempts to obtain U.S. immigration

18  benefits.

19      6.   Defendant ZHHEERA would provide false information

20  regarding her marriage to the United States citizen, her

21  relationship with defendant ABDULZAHRA, her residence, and her

22  commission of prior crimes during interviews with USCIS

23  officials.

24  C.   OVERT ACTS

25      In furtherance of the conspiracy and to accomplish the

26  objects of the conspiracy, defendants ABDULZAHRA and ZHHEERA,

27  and others known and unknown to the United States Attorney,

28  committed various overt acts within the Central District of

3

1 | California, and elsewhere, including but not limited to the
2 | following:

3 |     1.   On or about April 30, 2006, defendants ABDULZAHRA and
4 | ZHHEERA provided false information on a B1/B2 visa application,
5 | including false information regarding defendant ZHHEERA's
6 | marriage.

7 |     2.   On or about May 2, 2006, defendants ABDULZAHRA and
8 | ZHHEERA again provided false information on another B1/B2 visa
9 | application, including false information regarding defendant
10 | ZHHEERA's marriage, and regarding whether defendant ZHHEERA had
11 | ever previously sought any visa, entry into the United States,
12 | or any other U.S. immigration benefit by fraud or willful
13 | misrepresentation or other unlawful means.

14 |     3.   Between in or about May 2006 and in or about October
15 | 2006, defendant ABDULZAHRA recruited unindicted co-conspirator
16 | H.T., a United States citizen, to marry defendant ZHHEERA in
17 | exchange for money.

18 |     4.   In or around October 2006, defendant ABDULZAHRA and
19 | unindicted co-conspirator H.T. traveled to Jordan, where they
20 | met with defendant ZHHEERA.

21 |     5.   On or about October 4, 2006, defendant ZHHEERA married
22 | unindicted co-conspirator H.T. in Jordan.

23 |     6.   On or about October 11, 2006, with the assistance of
24 | defendant ABDULZAHRA, unindicted co-conspirator H.T. signed and
25 | submitted to USCIS Forms I-129F/Petition for Alien Fiancé(e) and
26 | I-130/Petition for Alien Relative on behalf of defendant
27 | ZHHEERA, so that defendant ZHHEERA could travel to the United
28 | States.

4

7.   On or about July 6, 2007, defendant ABDULZAHRA traveled to Jordan to meet defendant ZHHEERA.

8.   On or about July 18, 2007, defendants ABDULZAHRA and ZHHEERA traveled from Jordan to the United States.

9.   On or about October 27, 2007, defendant ZHHEERA signed, under penalty of perjury, a Form I-485/Application to Register Permanent Residence or Adjust Status.  On the form, defendant ZHHEERA provided false information regarding her marriage to unindicted co-conspirator H.T. and her residence, as well as false information regarding whether she had ever sought to procure a visa, entry into the United States, or other immigration benefit by fraud or misrepresentation.

10.   On or about March 12, 2008, defendant ZHHEERA and unindicted co-conspirator H.T. were interviewed together under oath by an Immigration Services Officer regarding defendant ZHHEERA's Form I-485.  Defendant ZHHEERA and unindicted co-conspirator H.T. provided false information during the interview, including affirming the information contained in the Form I-485.

11.   On or about January 18, 2010, defendant ZHHEERA signed, under penalty of perjury, a Form I-751/Petition to Remove Conditions on Residence ("Form I-751").  On the form, defendant ZHHEERA provided false information, including the following: (1) that defendant ZHHEERA was living at a residence in Valencia, California; (2) that she had never committed any crime for which she had not been arrested; (3) that she was not in a different marriage than the one through which her conditional resident status was obtained; and (4) that her

5

1   marriage to unindicted co-conspirator H.T. was not entered into
2   for the purpose of procuring an immigration benefit.

3       12.  On or about January 18, 2010, defendants ABDULZAHRA
4   and ZHHEERA provided a letter in support of defendant ZHHEERA's
5   I-751 application that purported to be from unindicted co-
6   conspirator H.T., but in fact, was fraudulently created by
7   defendants ABDULZAHRA and ZHHEERA.

8       13.  On or about December 17, 2010, defendant ZHHEERA
9   provided false information under oath when interviewed by an
10  Immigration Services Officer in connection with defendant
11  ZHHEERA's Form I-751, including false information regarding her
12  relationship to defendant ABDULZAHRA.

13      14.  On or about January 5, 2011, defendants ABDULZAHRA and
14  ZHHEERA signed a fraudulent lease agreement purporting to show
15  that defendant ZHHEERA was renting a room from defendant
16  ABDULZAHRA; defendants ABDULZAHRA and ZHHEERA then caused this
17  fraudulent lease agreement to be submitted to USCIS in support
18  of defendant ZHHEERA's Form I-751.

19      15.  On or about September 25, 2013, defendant ZHHEERA
20  signed, under penalty of perjury, a second Form I-751
21  application.  On the form, defendant ZHHEERA provided false
22  information, including the following: (1) that she had never
23  committed any crime for which she had not been arrested;
24  (2)  that she was not in a different marriage than the one
25  through which her conditional resident status was obtained; and
26  (3) that the marriage on which her conditional residence was
27  based was entered in accordance with the laws of the place where
28

1  the marriage took place and was not for the purpose of procuring
2  an immigration benefit.
3      16.  On or about August 8, 2014, defendant ZHHEERA appeared
4  for an interview regarding her second I-751 application.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT TWO

[18 U.S.C. § 1425(a)]

From on or about December 29, 2008, through on or about August 6, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant HAZIM ABDULZAHRA, also known as ("aka") "Hazim Abdulreda Abdulzahra," aka "Hazim Abdul-reda Abdulzahra," aka "Hazim Abdul Reda Abdul Zahra," aka "Hazim A. Abdul-Zahra," aka "Hazim Abdul-Ritha," aka "Hazim Abdulritha Abdulzahra," aka "Hazim 'Abd-al-rida 'Abd-al-Zahra" ("defendant ABDULZAHRA"), knowingly attempted to procure for himself, contrary to law, naturalization as a United States citizen.

Among other acts, defendant ABDULZAHRA knowingly attempted to procure naturalization for himself contrary to law by making, in connection with his Application for Naturalization ("Form N-400") and in interviews on August 3, 2009 and November 17, 2010, material false sworn statements, including the following: (1) that defendant ABDULZAHRA had been living in marital union with the same U.S. citizen for the prior three years; (2) that defendant ABDULZAHRA had never committed any crime for which he had not been arrested; (3) that defendant ABDULZAHRA had never been arrested, cited, or detained by any law enforcement officer, including the United States Citizenship and Immigration Services ("USCIS") or former Immigration and Naturalization Service ("INS"), for any reason; (4) that defendant ABDULZAHRA had never helped anyone enter the United States illegally; (5) that defendant ABDULZAHRA had never given false or misleading information to any U.S. government official while

8

1 | applying for any immigration benefit; and (6) that defendant
2 | ABDULZAHRA had never been ordered to be removed, excluded, or
3 | deported from the United States.  Each of these statements was
4 | false, fictitious, and fraudulent because, as defendant
5 | ABDULZAHRA then well knew, the following were true:
6 | (1) defendant ABDULZAHRA had not been living in marital union
7 | with the same U.S. citizen for the prior three years, and in
8 | fact had never lived with the U.S. citizen to whom he claimed to
9 | be married; (2) defendant ABDULZAHRA had committed crimes for
10 | which he had not been arrested, including by entering into a
11 | fraudulent marriage for the purpose of obtaining immigration
12 | benefits and by making false statements on his prior immigration
13 | applications; (3) defendant ABDULZAHRA had been detained by the
14 | INS on or about July 29, 1997, upon his entry into the United
15 | States without travel documents; (4) defendant ABDULZAHRA had
16 | helped defendant SABA ZHHEERA enter the United States illegally
17 | by arranging for a fictitious marriage to a United States
18 | Citizen and obtaining entry documents based on that marriage;
19 | (5) defendant ABDULZAHRA had given false and misleading
20 | information to government officials while applying for
21 | immigration benefits, including false statements concerning his
22 | marriage to a U.S. citizen; and (6) defendant ABDULZAHRA had
23 | been ordered to be removed from the United States on or about
24 | May 1, 2003.
25 |      Further, on or about July 28, 2011, defendant ABDULZAHRA
26 | made material false statements on his Form N-445/Notice of
27 | Naturalization Oath Ceremony, and affirmed such statements to an
28 | immigration official, including the following: that after the

9

1   date defendant ABDULZAHRA was first interviewed regarding his
2   Form N-400, that is, August 3, 2009, he: (1) had not been
3   divorced; (2) had not knowingly committed any crime or offense
4   for which he had not been arrested; and (3) had not given any
5   false testimony to obtain immigration benefits.  Each of these
6   statements was false, fictitious, and fraudulent because, as
7   defendant ABDULZAHRA then well knew, the following were true:
8   (1) defendant ABDULZAHRA was divorced from his U.S. citizen
9   spouse on or about April 26, 2011; (2) defendant ABDULZAHRA had
10  knowingly committed crimes for which he had not been arrested,
11  including by making false statements under oath at his second
12  interview regarding his Form N-400 application, on November 17,
13  2010; and (3) defendant ABDULZAHRA had given false testimony to
14  obtain immigration benefits, including during his second
15  interview regarding his Form N-400 application, on November 17,
16  2010.

COUNT THREE

[18 U.S.C. § 1546(a)]

On or about January 18, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant SABA ZHHEERA, also known as ("aka") "Saba Tohala," aka "Saba Salih Tohala," aka "Saba Salh Tohala," aka "Saba Salh Zahaira," aka "Saba Naji Zhayra," aka "Saba Salh Zaheera," aka "Saba Naji Zhheera," aka "Saba Salih Naji Zhheera," aka "Saba Zeehhera," aka "Saba Alzahaira," aka "Siba Salih Naji Zuhayrah" ("defendant ZHHEERA"), knowingly made under oath and, as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribed as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presented such application, affidavit, and other document which contained such false statement and which failed to contain any reasonable basis in law or fact.

Specifically, on or about January 18, 2010, defendant ZHHEERA knowingly signed, under penalty of perjury, and submitted to United States Citizenship and Immigration Services ("USCIS") a Form I-751/Petition to Remove Conditions on Residency ("Form I-751"), knowing of its content and knowing that it would be submitted to USCIS.  On the Form I-751, defendant ZHHEERA knowingly certified, under oath, false statements with respect to material facts, specifically: (1) that she was living at a residence in Valencia, California; (2) that she had never committed any crime for which she had not

11

Case 2:18-mj-00789-DUTY   Document 1   Filed 04/03/18   Page 51 of 56   Page ID #:51

1  been arrested; (3) that she was not in a different marriage than

2  the one through which her conditional resident status was

3  obtained; and (4) that her marriage to unindicted co-conspirator

4  H.T. was not entered into for the purpose of procuring an

5  immigration benefit.

6      These statements and representations were false,

7  fictitious, and fraudulent because, as defendant ZHHEERA then

8  well knew, the following were true: (1) defendant ZHHEERA was

9  not living at a residence in Valencia, California; (2) she had

10  committed crimes for which he had not been arrested, including

11  by entering into a marriage for the purpose of obtaining

12  immigration benefits and by making false statements in her prior

13  visa and immigration applications and interviews; (3) she was

14  married in a religious ceremony to defendant HAZIM ABDULZAHRA,

15  which was a different marriage than the one through which her

16  conditional resident status was obtained; and (4) defendant

17  ZHHEERA's marriage to unindicted co-conspirator H.T. was entered

18  into for the purpose of procuring an immigration benefit.

19                          STEPHANIE YONEKURA
20                          Acting United States Attorney

21

22                          ROBERT E. DUGDALE
                            Assistant United States Attorney
23                          Chief, Criminal Division

24                          PATRICK R. FITZGERALD
                            Assistant United States Attorney
25                          Chief, National Security Section

26                          CAMERON L. SCHROEDER
                            Assistant United States Attorney
27                          Deputy Chief, General Crimes
                            Section
28

                              12

# EXHIBIT C

1  STEPHANIE YONEKURA
   Acting United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   CAMERON L. SCHROEDER (Cal. State Bar No. 255016)
4  Assistant United States Attorney
        National Security Section
5       1300 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-0596
7       Fax: (213) 894-6346
        E-mail:Cameron.Schroeder@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR 14-634-SJO-1

13            Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                      HAZIM ABDULZAHRA
14            v.

15  HAZIM ABDULZAHRA and SABA
    ZHHEERA,
16
              Defendants.
17

18

19       1.   This constitutes the plea agreement between HAZIM

20  ABDULZAHRA ("defendant") and the United States Attorney's Office for

21  the Central District of California (the "USAO") in the above-

22  captioned case.  This agreement is limited to the USAO and cannot

23  bind any other federal, state, local, or foreign prosecuting,

24  enforcement, administrative, or regulatory authorities.

25                     DEFENDANT'S OBLIGATIONS

26       2.   Defendant agrees to:

27            a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

1   Court, appear and plead guilty to counts 1 and 2 of the Information

2   in <u>United States v. HAZIM ABDULZAHRA and SABA ZHHEERA</u>, CR No. 14-634-

3   SJO, which charge defendant with Conspiracy to Defraud the United

4   States in violation of 18 U.S.C. § 371 and Attempted Procurement of

5   Citizenship and Naturalization Unlawfully in violation of 18 U.S.C.

6   § 1425(a).

7            b.   Not contest facts agreed to in this agreement.

8            c.   Abide by all agreements regarding sentencing contained

9   in this agreement.

10           d.   Appear for all court appearances, surrender as ordered

11   for service of sentence, obey all conditions of any bond, and obey

12   any other ongoing court order in this matter.

13           e.   Not commit any crime; however, offenses that would be

14   excluded for sentencing purposes under United States Sentencing

15   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16   within the scope of this agreement.

17           f.   Be truthful at all times with Pretrial Services, the

18   United States Probation Office, the Court, and United States

19   immigration authorities, including United States Citizenship and

20   Immigration Services ("USCIS"), Immigration and Customs Enforcement

21   "ICE"), the Executive Office of Immigration Review and any

22   Immigration Judge, and Customs and Border Protection ("CBP").

23           g.   Pay the applicable special assessments at or before

24   the time of sentencing unless defendant lacks the ability to pay and

25   prior to sentencing submits a completed financial statement on a form

26   to be provided by the USAO.

27           h.   Voluntarily remove himself from the United States no

28   later than six months from the imposition of sentence in this matter,

2

1   and not return to the United States except pursuant to a valid and

2   lawfully obtained visa or other entry document.  If defendant is

3   unable to comply with the time limit set forth above after making

4   diligent and good-faith efforts to resolve his affairs, defendant

5   agrees to seek permission of the USAO to extend this timeframe, which

6   permission, if granted, must be in writing.

7        i.   Give up any claim to lawful permanent resident status

8   in the United States, and not seek to obtain any lawful permanent

9   resident card (commonly known as a "green card").  In keeping with

10  this agreement, defendant agrees to execute a form I-407, Abandonment

11  of Lawful Permanent Resident status, and to provide such form to the

12  USAO or a representative from the Department of Homeland

13  Security/Homeland Security Investigations at or before the time of

14  his departure from the United States.  Defendant also agrees to

15  surrender any green cards currently in his possession at or before

16  the time of his departure from the United States.

17        j.   Agree to and not oppose the imposition of the

18  following conditions of probation or supervised release:

19             i.   Defendant shall comply with the rules and

20  regulations of the U.S. Probation Office and General Order 318 or 05-

21  02, including, but not limited to, the condition that defendant shall

22  not commit another federal, state or local crime;

23             ii.  Defendant shall comply with the immigration rules

24  and regulations of the United States, and when deported or removed

25  from this country, either voluntarily or involuntarily, not re-enter

26  the United States illegally.  Defendant is not required to report to

27  the Probation Office while residing outside of the United States;

28  however, within 72 hours of release from any custody or any reentry

3

1  to the United States during the period of court-ordered supervision,

2  defendant shall report for instructions to the U.S. Probation Office;

3            iii. Defendant shall not obtain or possess any

4  driver's license, Social Security number, birth certificate, passport

5  or any other form of identification in any name, other than

6  defendant's true legal name, without the prior written approval of

7  the Probation Officer; nor shall defendant use, for any purpose or in

8  any manner, any name other than defendant's true legal name.

9                    THE USAO'S OBLIGATIONS

10     3.   The USAO agrees to:

11          a.   Not contest facts agreed to in this agreement.

12          b.   Abide by all agreements regarding sentencing contained

13  in this agreement.

14          c.   At the time of sentencing, provided that defendant

15  demonstrates an acceptance of responsibility for the offenses up to

16  and including the time of sentencing, recommend a two-level reduction

17  in the applicable Sentencing Guidelines offense level, pursuant to

18  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

19  additional one-level reduction if available under that section.

20          d.   Except for criminal tax violations (including

21  conspiracy to commit such violations chargeable under 18 U.S.C.

22  § 371), not further criminally prosecute defendant for violations of

23  18 U.S.C. § 1028A (Aggravated Identity Theft); 18 U.S.C. § 1621

24  (Perjury); 18 U.S.C. § 1015(a) (False Statement in a Naturalization,

25  Citizenship or Alien Registry Matter); 18 U.S.C. § 1546(a) (Fraud and

26  Misuse of Visas, Permits, and Other Documents); and 18 U.S.C. § 1001

27  (False Statements and Writings to a Government Agency) arising out of

28  defendant's conduct described in the agreed-to factual basis set

                              4